**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41835**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Unpublished Opinion No. 316** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: January 22, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOHN MATTHEW LONKEY,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Owyhee County. Hon. Renae J. Hoff, District Judge.

Judgment of conviction and sentences for burglary and rape, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

John Matthew Lonkey appeals from his judgment of conviction and sentences for burglary and rape. Specifically, he contends the prosecutor breached the plea agreement by disavowing the sentencing recommendation it agreed to make and that the district court abused its discretion by imposing an excessive aggregate sentence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Three days after being released from probation for second degree stalking, Lonkey knocked on the door of a closed bar late at night. He told T.S., the bartender, he was having car trouble and asked to use the phone. After she let him in, he offered her $300 to engage in sexual intercourse. T.S. refused and told Lonkey to leave, at which point he threatened her with a knife,

1

forced her into the bathroom, and raped her. He attempted to rape her again and threatened to continue to do so.

As Lonkey left, he broke a cordless phone. Lonkey returned to the bar and attempted to re-enter, but was unsuccessful because T.S. had locked the doors. After law enforcement released Lonkey's description to the media, Lonkey's aunt and stepfather viewed the bar's surveillance footage and identified Lonkey as the perpetrator. A search of Lonkey's car and residence uncovered, among other things, a knife and clothing matching that worn by the suspect in the surveillance footage. Lonkey denied involvement, but T.S. identified him in a lineup.

Lonkey was charged with rape, burglary, use of a deadly weapon during the commission of a crime, and interference with a telephonic communication instrument. Pursuant to a plea agreement Lonkey pled guilty to rape, Idaho Code §§ 18-6101 and 18-6101(4), and burglary, I.C. § 18-1401, in exchange for the State dismissing the remaining charges and agreeing to recommend concurrent sentences of no more than forty years in aggregate. Lonkey was free to argue for less.

At sentencing, the State requested the imposition of an aggregate forty-year unified sentence, with twenty years determinate, and Lonkey argued for the imposition of a fifteen-year unified sentence, with five years determinate, for the rape conviction, and a ten-year unified sentence, with five years determinate, for the burglary conviction. The district court imposed a unified life sentence, with twenty-five years determinate, for the rape conviction and a concurrent ten-year unified sentence, with five years determinate, for the burglary conviction. Lonkey now appeals.

## II.

## ANALYSIS

Lonkey contends the prosecutor breached the plea agreement by impliedly disavowing the sentencing recommendation it was obligated to make. In the alternative, he contends the district court abused its discretion by imposing an excessive aggregate sentence.

### A.    Plea Agreement

Lonkey contends that by making a "lengthy argument as to the aggravating factors" in his case and "speculat[ing] that the victim would probably ask for the maximum sentence (life) . . . the prosecutor severely undercut the agreed-upon recommendation by implicitly asking the district court to impose the maximum sentence." Initially we note that Lonkey did not object to

2

the prosecutor's statements below. Thus, he must show they amounted to fundamental error by demonstrating that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

At the sentencing hearing, the victim presented an impact statement and then the prosecutor described the facts of the incident and made the following relevant statements:

> [T]his case represents egregious and appalling and intentional wanton conduct on the part of the defendant.
>
> . . . .
>
> The State's agreed to a 40-year cap. I think if this victim could articulate some other sentence, she would ask that there be the absolute maximum imposed and the defendant be directed to the Department of Corrections forthwith. I think that's consistent with my discussions [with] her.
>
> The recommendation that the State has under these egregious facts and circumstances are as follows: We do ask that judgments of convictions enter as to each of those two felonies. I think this case is one which calls loudly for the imposition of a lengthy penitentiary sentence.
>
> And, further, one of the criterion under the code is whether a lesser sentence would be appropriate and otherwise would minimize the significance of this offense. The State's recommendation in keeping with what was negotiated by way of resolution in this matter is for a period of twenty years fixed in the State penitentiary, followed by twenty years indeterminate.
>
> . . . .
>
> It's interesting to note that in the analysis of the defendant's conduct, his past convictions, and outright denial of any culpability in this offense, that the recommendations from the PSI evaluator in fact was that a penitentiary sentence is appropriate.
>
> From the State's perspective, this defendant poses a great danger to other females and women in this community. A lengthy period of incarceration is required to address the severity of these offenses.

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *State v. Daubs*, 140 Idaho 299, 300, 92 P.3d 549, 550 (Ct. App. 2004). This principle is derived from the Due Process Clause and the fundamental rule that, to be valid, a guilty plea must be both voluntary and intelligent. *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct. App. 1985). If the prosecution has breached its promise given in a plea agreement, whether that

breach was intentional or inadvertent, it cannot be said that the defendant's plea was knowing and voluntary, for the defendant has been led to plead guilty on a false premise. *Daubs*, 140 Idaho at 300, 92 P.3d at 550; *State v. Jones*, 139 Idaho 299, 301-02, 77 P.3d 988, 990-91 (Ct. App. 2003). The prosecution's obligation to recommend a sentence promised does not carry with it the obligation to make the recommendation enthusiastically. *Daubs*, 140 Idaho at 300, 92 P.3d at 550; *Jones*, 139 Idaho at 302, 77 P.3d at 991. A prosecutor may not circumvent a plea agreement, however, through words or actions that convey a reservation about a promised recommendation, nor may a prosecutor impliedly disavow the recommendation as something which the prosecutor no longer supports. *Daubs*, 140 Idaho at 300, 92 P.3d at 550; *Jones*, 139 Idaho at 302, 77 P.3d at 991. Although prosecutors need not use any particular form of expression in recommending an agreed sentence, their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse. *Jones*, 139 Idaho at 302, 77 P.3d at 991.

In support of his argument, Lonkey cites to several cases where Idaho appellate courts have found that a prosecutor ran afoul of this maxim. In *State v. Lankford*, 127 Idaho 608, 903 P.2d 1305 (1995), the defendant was convicted of two counts of first degree murder. The State agreed to recommend an indeterminate life sentence (the most lenient sentence possible for first degree murder) in exchange for Lankford's testimony against his co-defendant. At the sentencing hearing, the State recommended an indeterminate life sentence, but then presented extensive evidence in aggravation, including evidence that the defendant had been a disruptive inmate, evidence that he must have been a more active participant in the murders than he admitted to being, and a psychologist's testimony that the defendant was a poor candidate for rehabilitation. In addition, the prosecutor presented argument that the defendant was highly culpable, manipulative, and dangerous. On appeal, the Idaho Supreme Court held that "allowing the state to make the arguments and introduce the evidence in aggravation to the extent that was done was reversible error, because it was so fundamentally at odds with the position the state was obligated to recommend that it amounted to a violation of the agreement." *Id*. at 617, 903 P.2d at 1314.

In *Jones*, 139 Idaho at 300-01, 77 P.3d at 989-90, the State had agreed to recommend retained jurisdiction and did so, but then stated it was "one of the most disturbing cases" the prosecutor had ever dealt with and engaged in a lengthy argument emphasizing the violence of

4

the defendant's offense, the defendant's failure to take responsibility, and his history of violence. The prosecutor concluded by stating that she "did not know all the information I do know now" when she agreed to recommend retained jurisdiction. *Id*. at 301, 77 P.3d at 990. This Court held the prosecutor had effectively disavowed the recommendation of retained jurisdiction and advocated a harsher sentence in violation of the plea agreement. *Id*. at 303, 77 P.3d at 992.

In *Daubs*, 140 Idaho at 300, 92 P.3d at 550, the prosecutor agreed to recommend retained jurisdiction. At the sentencing hearing a different prosecutor acknowledged the State agreed to the recommendation, but emphasized that the presentence investigation (PSI) evaluator had recommended prison and explained the basis for the recommendation, including the defendant's crimes, his prior record, and his substance abuse issues. The prosecutor then introduced the minor victims' parents, prefacing their comments by expressing the belief that they were better able to explain the "horrific consequences" the crime had on them, the victims, and the family. *Id*. This Court held that in the context of the entire proceeding, the prosecutor's statements "impliedly embraced the PSI recommendation, and constructively disavowed its recommendation of no more than a rider" in violation of the plea agreement. *Id*. at 301, 92 P.3d at 551.

Finally, in *State v. Wills*, 140 Idaho 773, 102 P.3d 380 (Ct. App. 2004), the prosecutor agreed to recommend a unified term of fifteen years, with a minimum period of confinement of three years, for each of two counts of lewd conduct. At the sentencing hearing, the prosecutor emphasized the defendant's pedophilia and insatiable hunger for young victims which would make it difficult to treat him and would lead to a high risk of repeat offenses of escalating severity upon his release, arguing that what Wills did was "just completely horrendous and almost unthinkable." *Id*. at 774, 102 P.3d at 381. The prosecutor then stated, "at a *very minimum* he should get [the agreed upon sentence]. I think the state is showing great restraint by only recommending that sentence." *Id*. (emphasis added). This Court held the prosecutor's argument breached the plea agreement:

> By presenting the recommended sentences as the *minimum* to be imposed and indicating that this minimum recommendation was made with "great restraint," the prosecutor failed to endorse the recommended terms as the ones the district court should accept. Instead, the prosecutor conveyed a reservation regarding the advisability of imposing those sentences and implied that longer terms would be more appropriate. This conduct was fundamentally at odds with what the state agreed to do under the plea agreement.

*Id*. at 776, 102 P.3d at 383.

In examining the nature of the comments in this case, we first address Lonkey's assertion that the prosecutor unequivocally stated that the victim wanted a life sentence (the maximum allowed by statute) to be imposed. The State counters that "it is clear from the context of the prosecutor's statements that the victim's wish for the 'maximum imposed' related to the '40-year cap' contemplated by the plea agreement, not the maximum imposed by law." The intended meaning of the remark is not entirely clear. On one hand, the use of the phrases "some other sentence" (implying a sentence other than the forty-year maximum pursuant to the agreement) and "absolute maximum" lends Lonkey's interpretation some basis; on the other hand, the fact the prosecutor ultimately requested less than the maximum of forty years determinate allowed by the agreement lends the State's interpretation, that the victim wanted the maximum under the plea agreement imposed, some validity. However, we are generally disinclined to infer the most damaging meaning to a prosecutor's ambiguous statement, *see State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009), and the balance of the prosecutor's remarks do not indicate the prosecutor was actually advocating for the imposition for such a severe sentence.

When examined in context, the prosecutor's statements are distinguishable from those in the cases cited by Lonkey. Rather, this case is more akin to *State v. Halbesleben*, 147 Idaho 161, 206 P.3d 867 (Ct. App. 2009). There, Halbesleben pled guilty to two counts of felony injury to a child and the State agreed to recommend a term of imprisonment of ten years, with one year determinate, for each count. Halbesleben was free to argue for lesser sentences. At sentencing, the prosecutor made the requisite recommendation after a recitation of some of the troubling facts of the case. The prosecutor also argued that any sentences less than the recommendation would depreciate the gravity of the offenses. The district court sentenced Halbesleben to consecutive terms of ten years, with three years determinate. On appeal, Halbesleben cited *Daubs*, 140 Idaho 229, 92 P.3d 549 and *Wills*, 140 Idaho 773, 102 P.3d 988, which in turn cite to *Jones*, 139 Idaho 299, 77 P.3d 988 and *Lankford*, 127 Idaho 608, 903 P.2d 1305, and contended the State breached the plea agreement because the prosecutor recommended the relatively lenient agreed-upon sentence "only as an afterthought and effectively renounced the recommendation through vigorous argument against Halbesleben and the graphic details and implications of her crimes." *Halbesleben*, 147 Idaho at 164, 206 P.3d at 870.

This Court disagreed, reasoning, in relevant part:

> The facts of these cases relied on by Halbesleben are all distinguishable from her case. In each of the cases cited above, the prosecutor acknowledged the recommendation required by the plea agreement but argued various other reasons why the district court should not accept the recommendation and, instead, impose a more severe sentence. Or, in the case of *Lankford*, the prosecutor presented additional aggravating evidence which, at a sentencing for first degree murder, only served to favor imposition of the death penalty or fixed life. This was entirely inconsistent with the state's agreement to recommend an indeterminate term of life imprisonment. In the present case, the prosecutor made no allusion to a more severe recommendation contained in the PSI nor gave any personal opinion that Halbesleben's crimes merited a greater punishment than what was recommended. The prosecutor's vigorous argument did not undermine the sentencing recommendation but, rather, buttressed it against any argument from defense counsel that Halbesleben merited even lesser sentences based on mitigating factors. Therefore, the prosecutor did not impliedly disavow the sentencing recommendation through her vigorous argument of the facts of Halbesleben's crimes and, thus, did not breach the plea agreement.

*Halbesleben*, 147 Idaho at 168, 206 P.3d at 874.

Likewise in this case, the prosecutor did not ascribe to a more severe recommendation and did not convey a personal opinion that Lonkey's crimes merited a more severe sentence. In fact, by only requesting twenty years determinate, the prosecutor recommended well under the forty-year determinate cap allowed by the plea agreement. And, also like in *Halbesleben*, Lonkey was entitled to argue for a lesser sentence and the prosecutor's argument and references to facts of the burglary and rape did not undermine the sentencing recommendation, but "buttressed it against any argument from defense counsel" that lesser such sentences were merited (which, Lonkey did in fact argue). *See id.* This is simply not a case where the prosecutor impliedly (or explicitly as in several cases discussed above) disavowed the agreed upon recommendation. Thus, there was no error and Lonkey has not satisfied the first prong of *Perry*.

## B.     Sentence Review

Lonkey also contends the district court abused its discretion by imposing an aggregate unified sentence of life imprisonment, with twenty-five years determinate. Specifically, he argues the district court did not properly take into account relevant mitigating factors, including his assertion that he had previously been successful on probation and that with programming and supervision he could likely be successful in the community, the support of his family members,

his remorse for the incident, and the fact he suffers from depression and attention deficit hyperactivity disorder.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In imposing the sentence, the district court discussed the egregiousness of the crimes and the fact Lonkey had "terrorized a good community and a good citizen." The court noted that it reviewed the PSI report and that Lonkey was an "extreme risk to the safety" of the community. The court indicated it was "bothered" by the fact Lonkey had not taken responsibility for his criminal behavior and the fact he had previously been afforded the benefit of treatment in the juvenile justice system but had still reoffended. Noting it was mindful that Lonkey had "some issues and some problems" and was young, the court nevertheless stated that it could not "overlook the huge risk that you are to our society" and the fact he was not a first-time offender. The court then specifically discussed the statutory sentencing considerations, reiterating that Lonkey presented a continued risk to society, that he could receive treatment in prison, and the need to emphasize the seriousness of the crimes and promote deterrence.

Considering all the relevant circumstances, the district court did not abuse its discretion in imposing the sentence. The district court did consider Lonkey's past probation, but determined it was troubling that he had not been rehabilitated by the treatment he received. In

8

addition, the court specifically recognized and considered Lonkey's mental health issues, but ultimately determined they did not overcome the significant risk Lonkey continued to present to the community. Additionally, as the State points out, while the PSI report indicates that Lonkey's mother stated that they "get along," she acknowledged his longstanding issues, noted that they had to place an alarm on Lonkey's door when he lived with them in order to provide for the safety of her younger children, and that Lonkey required a "structured environment." Further, the PSI report indicates that although Lonkey stated he was "completely confused on why [he] did it and totally ashamed," he could "not recall raping" T.S. and thus any show of remorse was minimal. This was a heinous and violent crime by a person who had a significant past record, who had not been rehabilitated by previous treatment, and who presented a serious risk to the community to reoffend. Given these facts, the district court's imposition of a significant sentence was not an abuse of discretion.

## III.

## CONCLUSION

The prosecutor did not disavow the sentence it had agreed to recommend such that it breached the plea agreement. Nor did the district court abuse its discretion in imposing the lengthy aggregate sentence. Lonkey's judgment of conviction and sentences for burglary and rape are affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.

9